Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 1047 | **DATE** | 12/8/2003 |
| **CASE TITLE** | | USA vs. Carl Edwards | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Edwards' Guideline "range" is therefore a single number - - 120 months - - and this Court has sentenced him accordingly. None of the other aspects of his sentence have implicated any questions of law, and they have therefore been left to this Court's oral pronouncement of sentence and its judgment and commitment order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 10 2003 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 12/9/2003 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) No. 02 CR 1047
)
CARL EDWARDS, )
)
Defendant. )

DOCKETED
DEC 0 9 2003

MEMORANDUM OPINION AND ORDER

This memorandum opinion and order is issued to memorialize the sentence just imposed on Carl Edwards ("Edwards") following his guilty plea to two narcotics offenses. Although this Court most frequently deals with criminal sentencing through oral rulings (even though such oral rulings may on occasion be extended in form), in this instance the combination of a full day's sentencing hearing plus the existence of several complex legal questions (one of first impression in this Circuit) occasions this written treatment.

It is worth remarking at the outset that Edwards has benefited from the extraordinarily creative and well-presented representation afforded him by his counsel, Nishay Sanan, Esq. (this should not at all be viewed as casting any aspersions on the very able representation provided on the government's behalf by the two Assistant United States Attorneys assigned to the case, who also did the best that could be done on their side of the issues). In summary, neither side's counsel should be

faulted at all for the fact that the law has turned out to provide neither party with total victory or total defeat.

Case History

Edwards was charged in a two-count indictment with virtually identical offenses, differing only in their operative dates (about two weeks apart) and with each involving just over 50 grams of a controlled substance. So Count One can fairly be viewed as representative of both charges:

> On or about October 28, 1999, at Evanston, in the Northern District of Illinois, Eastern Division, CARL EDWARDS, defendant herein, knowingly and intentionally possessed with intent to distribute in excess of 50 grams of mixtures containing cocaine base, a Schedule II Narcotic Drug Controlled Substance; in violation of Title 21, United States Code, Section 841(a)(1).

On October 2, 2003 Edwards proffered a blind guilty plea to both charges of violating 21 U.S.C. §841(a)(1).[1] What he did not acknowledge, however, was the government's characterization of the controlled substance involved: Both his counsel at the inception of the plea proceeding and Edwards in his own oral acknowledgment of what he had done (something that this Court always requires of any defendant proposing to plead guilty, even when a written acknowledgment has been included in a lawyer-prepared plea agreement) stated only that the controlled substance in each instance was cocaine. And cocaine in all its varied forms is a Schedule II controlled substance under Section

---

[1] All further references to Title 21's provisions will simply take the form "Section--."

2

812--see subparagraph (a)(4) in the Schedule II listing.

Because the United States did not seek Edwards' immediate detention upon his acknowledgment of guilt at the time of his proposed guilty plea, this Court followed its regular practice in such situations by then finding only (1) that Edwards was fully competent and capable of entering an informed plea, (2) that he was aware of the nature of the charges and the consequences of the proposed plea and (3) that the proposed guilty plea was both knowing and voluntary and was supported by an independent basis in fact containing each of the essential elements of the offense--but it did so without actually accepting the proposed plea (a step that would have triggered Edwards' immediate detention under 18 U.S.C. §3143(a)(2)). Instead this Court deferred consideration of such acceptance until the prospective sentencing date. And to avoid the potential Catch-22 that could be created by the Fed. R. Crim. P. 32(e)(1) prohibition against judicial consideration of the anticipated presentence investigation report ("PSI") before such acceptance, this Court requested and obtained the agreement of Edwards and his counsel to its review of the PSI before sentencing.

After the PSI had indeed been generated, and after both sides had then staked out their respective positions on the perceived factual and legal issues involved, this Court conducted the required evidentiary hearing on December 4, 2003 as to the

nature of the actual controlled substances with which Edwards had dealt. That hearing occupied the entire available portion of that day (just two days earlier a special meeting of the judges of this District Court had been called for December 4, knocking out a material part of the day that would otherwise have been devoted to the hearing and to the post-hearing arguments and imposition of sentence). Accordingly the sentencing was set for December 8, and this Court then imposed the custodial sentence described hereafter.

## Potential **Apprendi** Implications

Before this opinion turns to the substantive resolution of questions as to, and flowing from, the nature of the controlled substances themselves, a moment should be spent in identifying the possible interaction of the analysis here with the teaching of Apprendi v. New Jersey, 530 U.S. 466 (2000). As the ensuing discussion will reflect, there is no question that the substances at issue contained cocaine--instead the question to be resolved will be just what type of coca leaf derivative they were. And if it were possible that the statutory maximum sentence that could be imposed would be increased by reason of the answer to that issue (compare, e.g., Section 841(b)(1)(C), with its 20-year maximum, with Section 841(b)(1)(A), with its life imprisonment maximum), Apprendi would require that the facts underpinning that answer must have been submitted to a jury and proved beyond a

reasonable doubt--not decided by a judge in a sentencing hearing (see, e.g., United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000)).

It is of course true that a guilty plea involves the waiver of a jury trial, so that a defendant's full acknowledgment of the requisite criminal conduct in such a plea would eliminate any potential Apprendi problem (cf. Behrman, id.). But in this case Edwards' guilty plea did not reach to the full extent charged in the indictment as the government would read it, so that if the gap between Edwards' acknowledgment and the charges (if they were properly so read) would give rise to an increase in the statutory maximum punishment, Apprendi would rear its head after all.

But--and there always seems to be a but--one more refinement must be added. Suppose arguendo that Apprendi were indeed implicated by this Court's resolution in the sentencing process of a fact that should have gone to a jury (or, as a legal equivalent, that should have been admitted by Edward in the course of his waiver of jury trial and proposed guilty plea). But even so, if Edwards' actual conduct would trigger the possibility of a maximum life sentence beyond a reasonable doubt in any event, our Court of Appeals teaches that any possible Apprendi error in the course of sentencing would be harmless (United States v. Arocho, 305 F.3d 627, 638-39 (7th Cir. 2002) and cases cited there).

5

With the knowledge of a possible Apprendi implication always thus being kept in mind, it is appropriate for this Court to consider the key issues posed by the parties' evidentiary presentations and the relevant authorities. This opinion turns to that task.

## Cocaine, Cocaine Base and Crack Cocaine

With no actual mention of "crack" having been made by Edwards or by others in his presence as to either of the two transactions charged in the indictment--whether in any recorded or testified-to conversation, or in his Mirandized admissions after he was apprehended--and having been put before this Court, the issue of crack cocaine vel non has come down to a battle of experts. On the government's part this Court heard from Dr. James DeFrancesco (his Ph.D. was in chemistry), while Edwards' counsel called Dr. Michael Evans (his Ph.D. was in toxicology) to the stand.

Before the battle lines between the opposing experts are drawn, it should of course be said that the omission of specific use of the term "crack" in drug transactions is not necessarily a weighty factor, for drug dealers may well use other terms to describe their wares, whether in an effort to avoid detection or simply as a matter of employing other street lingo (thus Edwards was recorded as having referred to his "shit"). On the other side of the coin, a factor that this Court also finds to have

carried no particular force was the evidence proffered by the government as to Edwards having been a buyer and seller of crack in the past. Nothing in such proffered evidence identified him as having dealt exclusively in that commodity. Moreover, drug dealers have frequently been known to have passed off one substance for another--one of the many ways in which a variant on the old saying that "there is no honor among thieves" is demonstrated.

In all events, the question for determination here is of course what Edwards did <u>this time</u>, not in the past.[2] And as to that question, the best kind of objective evidence exists: the controlled substances themselves.

As to that evidence, the government's forensic drug chemist Dr. DeFrancesco testified that in his view his laboratory tests had established that the substances were indeed crack, which he described accurately as a street term that is not used scientifically. And he also testified accurately that chemists use the technical term "cocaine base" instead, and he then proceeded to establish--in a manner that certainly passes muster under <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999)--that both

---

[2] If the Federal Rules of Evidence ("Rules") circumscribed sentencing proceedings, as they do not, testimony about such prior dealings would collide with Rule 404(b). But even in the absence of such a rule of exclusion, not much if anything is to be made of the proffered testimony as to earlier events.

7

substances were indeed cocaine base (and not cocaine hydrochloride).

But the fundamental problem that devalues entirely Dr. DeFrancesco's attempted extension of his convincing determination that the substances were <u>cocaine base</u> to a conclusion that they were also <u>crack cocaine</u> is that he did so, as his answers to more than one question repeatedly revealed, solely on the basis of his understanding that the Sentencing Guidelines equate the two. In that respect he acknowledged, in response to a follow-up question by this Court, that his opinion was based on Guideline §2D1.1(c)(D):

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

What neither Dr. DeFrancesco nor the government counsel have recognized is that such total reliance renders Dr. DeFrancesco's opinion--beyond his admittedly reliable proof that the substances involved were some type of cocaine base in chemical terms--wholly worthless on the question of crack vel non. Any opinion of the type that he expressed--one that derives from simply assuming the conclusion that it reaches--obviously rests on a foundation of sand (or more accurately, no foundation at all).

By contrast, Dr. Evans' testimony (which conformed in all respects to the demands of <u>Daubert</u> and <u>Kumho Tire</u>) demonstrated

8

persuasively that the substances involved were <u>not</u> crack.[3]
Unlike Dr. DeFrancesco, Dr. Evans testified to the accepted proposition that while all crack is cocaine base, not all cocaine base is crack (see, e.g., our Court of Appeals' statement in United States v. Adams, 125 F.3d 586, 591 (7th Cir. 1997) that "cocaine base is a more generic and inclusive term, also applied to other forms of cocaine"). And with that understanding, Dr. Evans testified lucidly and convincingly why his examination, testing and analysis of the portion of the controlled substances that had been delivered to him by the government established that those substances did <u>not</u> come within the "crack" portion of the cocaine base spectrum--as to both substances, the results of his laboratory analysis (D. Ex. 3) read:

Positive for Cocaine: Negative for Crack Cocaine.

---

[3] In response to questions by government counsel, Dr. DeFrancesco testified that he had reviewed Dr. Evans' curriculum vitae and then attempted to denigrate the latter's level of expertise by pointing to his Ph.D. in toxicology, in contrast to Dr. DeFrancesco's own Ph.D. in chemistry. For shame. In point of fact, Dr. Evans' credentials and vast experience far better qualify him to render the opinion that was potentially critical to the hearing--whether or not crack cocaine was involved--than Dr. DeFrancesco. It is unnecessary to recite chapter and verse on that score--simply a reading of both Dr. Evans' cv and his testimony describing his extensive background and experience delivers that message powerfully. It is also worth pointing out that Dr. Evans is far removed from any pejorative label of "hired gun": the professional witness for criminal defendants who may tailor his or her testimony to whatever is requested. To the contrary, among other things that confirm Dr. Evans' impeccable credibility, some 90% of his work in testifying and in providing professional opinions is in being called as a witness or retained by the prosecution rather than by the defense.

It is true that the substances delivered to Dr. Evans were not in their original form, having been ground into powder form to carry out the government's analysis before portions of both substances were sent to him for analysis and testing. But his testimony that the products did not exhibit the color differential from pure white or near-white that invariably results from the addition of sodium bicarbonate to produce crack, as well as his other differentiating testimony (a conclusion also reflected in his report, D. Ex. 3), carries the day. And it will be remembered that Dr. DeFrancesco's opinion to the contrary was based solely on the fact that the Guidelines equate the terms 'cocaine base" and "crack" purely as a definitional matter, not as a scientific fact--a usage that has no probative force as against Dr. Evans' professional and scientifically sound opinion. This Court therefore finds by a preponderance of the evidence that both controlled substances involved in this case were cocaine base (a determination not contested by either side)--but that they were *not* crack.

Why does the distinction between crack and other forms of cocaine base make a difference in Guideline sentencing? Like other courts that have looked at the Guidelines in that respect, our Court of Appeals has held that Guideline §2D1.1(c)(D) should be read as making the more severe sentencing range that is prescribed for "cocaine base" applicable *only* to crack. After a

thorough and careful discussion and analysis of the subject in Adams, 125 F.2d at 590-92, the Court of Appeals announced its conclusion (id. at 592):

> We find the reasoning of the Munoz-Realpe opinion [United States v. Munoz-Realpe, 21 F.3d 375, 377 (11th Cir. 1994)] persuasive and agree with the Eleventh Circuit that under the new definition of "cocaine base" found in the guidelines only the form of "cocaine base" which is "crack" is eligible for the enhanced sentence. Thus the government must prove by a preponderance of the evidence that the defendant possessed "crack."

In Edwards' case, an aggregate of slightly over 100 grams of the controlled substance was involved in the two instances charged in Counts One and Two. If the substances had been crack, the Probation Officer's calculation of a total offense level of 29 (level 32 less a three-level reduction for acceptance of responsibility) and criminal history category III (from his December 1, 2003 supplemental report modifying the PSI) would have prescribed a range of 108 to 135 months. By sharp contrast, just over 100 grams of cocaine base _other_ than crack call for a total offense level of 15 under Guideline §2D1.1(c) (level 18 less the three-level reduction for acceptance of responsibility), which with Edwards' criminal history category III would produce a range of only 24 to 30 months.[4]

That however is not the end of the story. It is after all the statutory definition of the controlled substances, not the

---

[4] Both sets of figures in this paragraph are without reference to the mandatory minimum sentence discussed later.

11

Guideline definition, that must control the legal consequences of Edwards' conduct. And that is a subject on which an intercircuit split exists, exemplified by the different approaches taken by the Eleventh Circuit and the Second Circuit. As for the former, Munoz-Realpe, 21 F.3d at 377 has held that Congress' action in permitting the Sentencing Commission's 1993 ameliorating amendment to the Guidelines to take effect also served to define the meaning of "cocaine base" in Section 841(b)(1)(A)(iii). As for the latter, United States v. Palacio, 4 F.3d 150, 154-55 (2d Cir. 1993) has rejected the Guideline amendment as controlling the substantive meaning of the term in the criminal statute.

In our own Circuit the situation is a bit muddied. In the course of our Court of Appeals' analysis in United States v. Booker, 70 F.3d 488, 492-94 (7th Cir. 1995) that distinguished between crack and all other forms of cocaine for Guideline purposes, it agreed with the Fourth Circuit's reasoning in United States v. Fisher, 58 F.3d 96, 99 (4th Cir. 1995) "holding that the enhanced penalties applied to crack and the lesser penalties applied to all other forms of cocaine." And in so doing Booker, id. at 494 (footnotes omitted) said that the distinction between the two substances was one shared by Congress as well as the Sentencing Commission:

> But whatever the merits of the distinction, it is clear
> that Congress intended the enhanced penalties to apply
> to crack cocaine and the lesser penalties to apply to
> all other forms of cocaine. Likewise, the same

12

concerns undoubtedly motivated the Sentencing
Commission when it adopted the distinction between
cocaine and cocaine base for the purposes of the
guidelines. Thus, we hold that the sentencing
provisions for "cocaine" and "cocaine base" are not
ambiguous because although the terms have the same
scientific meaning, both Congress and the Sentencing
Commission intended "cocaine base" to mean crack
cocaine.

That could perhaps have been read as a possible alignment on the Eleventh Circuit's side of the division (as against the Second Circuit's view) as to the construction of the statutory provision (indeed, the Second Circuit itself read Booker just that way in United States v. Fields, 113 F.3d 313, 325 (2d Cir. 1997)). But in our Court of Appeals' later opinion in Adams--while it reached the already-described conclusion as to the proper reading of the Guideline--it has expressly reserved ruling on the meaning of "cocaine base" in the statute (125 F.3d at 591 n.4):

> The court went on to discuss whether the term "cocaine base" found in 21 U.S.C. §960(b)[5] (mandating a ten year minimum sentence for a person convicted of importing 50 grams or more of a mixture or substance containing cocaine base) was amended through the amendment to the Sentencing Guidelines. The Eleventh Circuit found that it was. The Second Circuit disagreed, in United States v. Palacio, 4 F.3d 150 (2d Cir. 1993). See also United States v. Jackson, 59 F.3d 1421, 1423-24 (2d Cir. 1995)(reaffirming Palacio), cert. denied, ___ U.S. ___, 116 S.Ct. 1428, 134 L.Ed.2d 551 (1996). The interpretation of "cocaine base" within 21 U.S.C. §960(b) is not at issue in the present case and we

---

[5] [Footnote by this Court] Because Section 841(b) parallels Section 960(b) in all respects, Adams' reservation of the statutory issue for the future applies with equal force to the statute now under consideration.

13

decline to express any opinion on that issue.

In light of that most recent statement, this Court believes that it must deal with the statutory question as one of first impression in our Circuit.

For that purpose this Court holds that it cannot improve on the lucid and convincing treatment provided by the Third Circuit in <u>United States v. Barbosa</u>, 271 F.3d 438 (3d Cir. 2001). Early in its discussion <u>Barbosa</u> pointed out that both the Eleventh Circuit and the Second Circuit were looking at the question of statutory meaning in terms of how the Sentencing Guideline amendment would impact on earlier decisions by those courts, so that--at least in part--considerations of stare decisis drove the conclusions reached there (271 F.3d at 463-64). But <u>Barbosa</u> then concluded for its own part that the Third Circuit was writing on a clean slate (<u>id.</u> at 464-65), and it then proceeded to examine the question afresh.

It would be both pointless and wasteful simply to reproduce the ensuing <u>Barbosa</u> analysis (<u>id.</u> at 465-67). Instead this Court wholeheartedly embraces all that is said there, and it therefore arrives at the identical conclusion as did <u>Barbosa</u> (<u>id.</u> at 467):

> Therefore, we hold that, while the term "cocaine base" means only crack when a sentence is imposed under the Sentencing Guidelines, "cocaine base" encompasses all forms of cocaine base with the same chemical formula when the mandatory minimum sentences under 21 U.S.C. §841(b)(1) are implicated.

14

## Conclusion

Guideline §5G1.1(b) explicitly provides that a statutory mandatory minimum sentence trumps any lesser Guideline maximum:

> Where a statutorily required minimum sentence is greater than the maximum of the applicable Guideline range, the statutorily required minimum sentence shall be the Guideline sentence.

That is the case here: Dr. Evans has not challenged Dr. DeFrancesco's compelling proof that the substances with which Evans dealt were cocaine base, and under Barbosa that triggers the ten-year mandatory minimum sentence under Section 841(b)(1)(A) because the quantity involved meets the level described in clause (iii) of that subsection.[6]

Edwards' Guideline "range" is therefore a single number--120 months--and this Court has sentenced him accordingly. None of the other aspects of his sentence have implicated any questions of law, and they have therefore been left to this Court's oral pronouncement of sentence and its judgment and commitment order.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 8, 2003

---

[6] Thus the conduct acknowledged by Edwards, coupled with the undisputed (and indisputable) fact that the substances involved were cocaine base, brings him within Section 841(b)(1)'s maximum potential sentence of life imprisonment. Hence any possible Apprendi implication, as discussed earlier, is dispelled under the analysis in Behrman, 235 F.3d at 1054.

15